Plaintiff was a passenger on defendant's Line Avenue trolley bus on the morning of March 16, 1940, and experienced an accident as she alighted therefrom at Ontario Street. She sues to recover damages on the theory that the injuries sustained by her were the result of the motorman's negligence in that he brought the bus to an unusual and sudden stop, which precipitated her through the folding side doors of the bus on to the ground. The gravamen of her complaint is reflected from the following articles of her petition, viz.:
"Art. 4. That the car was going very fast, and upon nearing said intersection, said motorman negligently quickly applied the brakes, making a sudden and abrupt stop without warning to your petitioner, causing her to be thrown against the said back door.
"Art. 5. That the said door flew open, causing her to fall through same, causing her to fall to the ground, her shoulders and hands hitting the ground; and the doors, closed after petitioner fell through same, but in closing, the said doors closed on petitioner's right leg, severely and painfully injuring said knee, leg and ankle of said right leg.
* * *
"Art. 8. She shows that the motorman was negligent in releasing said doors before coming to a complete stop, for if the doors had not been released she would not have fallen through same.
"Art. 9. She shows that if the motorman had not negligently released said doors before stopping, and had not negligently made the sudden and abrupt stop, she would not have been injured."
Defendant admits that plaintiff was a passenger on its bus at the time and alighted at the place alleged, but denies all other allegations of her petition. Further pleading, defendant avers that if plaintiff suffered any injury whatever in alighting from the bus her own negligence and carelessness should be accredited therewith because she failed to exercise due and ordinary prudence in leaving the bus, the particulars of which are set forth. Alternatively, her own negligence in these respects is pleaded in bar of recovery.
Plaintiff's demand was rejected and her suit dismissed. She appealed.
Defendant's contention is that after plaintiff got off of the bus her ankle turned and that to this fact alone is due whatever injury she sustained.
The physician who treated plaintiff immediately after the accident found the right ankle sprained and the right knee slightly bruised. There were no fractures nor was there other evidence of trauma.
Plaintiff had traveled on this bus frequently, going to and returning from her work on Ontario Street. She testified that while it was traveling rapidly when she signaled the motorman to stop, its speed was not unusual; that after giving the signal to stop she left her seat and proceeded toward the door preparatory to alighting, and as she faced the door she balanced herself by holding to one of the upright posts with her left hand, and that:
"A. * * * when the car commenced to stop it swung me this way, then brought me back this way (indicating) jerked my hand aloose and this shoulder hit the door and this shoulder hit the door and I goes out face foremost, throwing this left foot to the ground; as I went on out the door closed, hit this knee and caught it — *Page 841 
"Q. Your right knee? A. Yes sir, caught that foot and I twisted it on out and I was standing just like this, down like this (indicating position) * * *."
She also testified that as she fell forward her weight pulled her right foot through the doors, twisting and injuring the ankle and leg.
Plaintiff's version of the accident is corroborated substantially by another colored woman passenger. There were several other passengers on the bus, but this one alone was produced to support plaintiff's contentions as to the facts of the accident. A negro woman on the opposite side of Ontario Street, introduced as a witness for plaintiff, testified that she saw plaintiff step off of the trolley and not fall through the doors as claimed. A negro man by the name of Clifton Williams, coming out of Ontario Street, was the first person to reach plaintiff after her ankle turned. He was called by plaintiff as a witness. Plaintiff testified that after she fell she did not move until this man came to her assistance. Williams' testimony directly conflicts with that of plaintiff on this point. He testified:
"Q. You saw the trolley pull away? A. Yes, sir.
"Q. Did she, did Gestner ever fall to the ground? A. I didn't see that.
"Q. She was still standing up when you got there? A. Yes, sir.
"Q. She was not lying on the ground? A. No, sir, not that I saw."
There is other testimony in the record to support defendant's theory of the accident. We think that as plaintiff alighted from the bus and stepped on the neutral ground her right ankle turned. This caused the weight of her body to shift suddenly to her right and to force her knee to the ground. The testimony abundantly sustains this theory. Had plaintiff fallen forward through the doors, as she claims, her injuries would have been much more serious and would have involved more of her body.
No witness for plaintiff would say that the bus was brought to a stop suddenly or that any one aboard was disturbed from the effects of the stop. The motorman testified that the stop was made without any unusual jerk or suddenness, and that he did not release the latch on the doors until the stop was complete. He knew nothing of plaintiff's injury or the alleged accident until after she made claim against defendant.
In addition to all this, it is shown that the folding doors swing outward on slight pressure after being released by the motorman, and are pulled back in place by a small wire spring; that along the edge of each door there is attached a strip of rubber one-eighth (1/8") inch thick and about three (3") inches wide; that when the doors are closed there is a space between the frames approximately five (5") inches wide which is covered by the rubber strips, and that if a person's foot or lower leg should be caught between the doors, no injury would or could result.
The testimony in this case, contrary to the rule prevailing in cases of this character, leaves practically no doubt that plaintiff was not injured through the fault of the motorman. Her exit from the bus was safely executed. Whatever injury she sustained thereafter cannot be charged to defendant. If plaintiff made out a prima facie case, of which there is great doubt, defendant successfully rebutted it with an abundance of testimony.
The judgment appealed from is manifestly correct. It is affirmed with costs.